# IN THE OREGON TAX COURT

John C. SURRETT

*v.*

## DEPARTMENT OF REVENUE

(TC 3108)

Plaintiff appeared *pro se*.

James C. Wallace, Assistant Attorney General, Department of Justice, represented defendant.

Decision for defendant rendered November 14, 1991.

**CARL N. BYERS, Judge.**

Plaintiff appeals the assessed value of his personal residence as of January 1, 1990. He contends the assessed value of $323,880 is in error and the true cash value as of the assessment date was no more than $297,140.

Plaintiff presented a two-pronged attack on the assessed value. The first was directed at the assessor's use of trending to increase the assessed value from $297,140 for 1989 to $323,880 for 1990. Plaintiff agreed that $297,140 was the correct assessed value for January 1, 1989. He also

believed that the amounts allocated to the land ($190,000) and to the improvements ($107,140) were accurate. However, plaintiff does not believe the assessor's application of a nine percent trend factor is correct. He believes the trending is flawed.

Plaintiff analyzed the 35 sales in defendant's sales ratio study and concluded all but two were outside the appropriate time frame. However, plaintiff's position is based upon a misunderstanding of assessed values and trending. Plaintiff believes the January 1, 1989, assessed value was based on the value set forth on the tax statement issued in November, 1988 for the 1988-89 fiscal year. That is not the case. *See* ORS 308.215 and 308.242. In short, plaintiff's attack on the assessor's trending was based on a misunderstanding with regard to the comparison dates.

Plaintiff did point out some minor errors in the assessor's work. The first sale shown on the sales ratio study shows land at $35,000. The correct amount of assessed value for the land was $350,000. The court does not consider this error significant. The total correct assessed value was $456,840 and the property sold for $540,000, or 18 percent more than its assessed value.

Plaintiff also pointed out that the sales ratio study included some properties on canals and bays which are not similar to the other properties in the study. Plaintiff is correct. However, as defendant's witness pointed out, exclusion of those properties would have resulted in an increased trending factor.

Plaintiff appears to believe the value of his property has not increased while all of the objective market evidence is to the contrary. The only objective evidence plaintiff could point to was the sale of the house on Diamond Head Road. That property sold for $248,000 in January of 1989, while plaintiff indicated he believed it had an assessed value as of January 1, 1989, of $249,040. Page four of Exhibit 8 shows an assessed value of $248,830.

■   The second prong of plaintiff's attack on the assessed value concerned the appraisal of the property by the assessor. Plaintiff maintains the appraisal violates ORS 309.115. That statute "freezes" an adjudicated property's value for five

years following the adjudication. However, subsection (2) of that statute expressly provides that the freeze section:

"[S]hall not apply to changes in value as a result of:

"* * * * *

"(b) Annual trending or indexing applied to all properties of the same property class in the county, or within clearly defined areas of the county under ORS chapter 309."

Thus ORS 309.115 does not prevent the assessor from increasing the assessed value based on trending. The appraisal was performed only to defend the trended value in plaintiff's appeal before defendant and this court. The purpose of the appraisal was to establish that the trended value did not exceed the actual true cash value of the property.

In performing that appraisal, defendant's appraiser valued the improvements and the land separately. He used three comparable sales for the land and three for the improvements, all of which were improved sales. The appraiser readily admitted that two of the three land comparables are not comparable to the subject. That left him with one land comparable on which he performed a land residual analysis. He analyzed three improvement comparables in the same manner, removing the value of the land to arrive at a value for the improvements.

The court questions the quality of any of defendant's indications of value since any error in its estimate of land value affects the value attributable to improvements. The method is particularly suspect in this case because the land values greatly exceed the value of the improvements. In such circumstances, it would appear necessary or appropriate to perform a cost approach analysis to determine the value of the improvements alone.

Although plaintiff made some good points in challenging defendant's appraisal, he was not able to overcome the objective evidence of value supporting the assessed value. Plaintiff is trying to show that while all of the properties in the neighborhood have increased in value, the subject property did not. That is a heavy burden of proof. The taxpayer must show that the subject property has traits or problems the other properties do not have. Also, the taxpayer must show the market would discount the value of the subject

property because of those problems or traits. That is not a burden of proof that can be carried with one comparable sale.

Based on the above, the court finds that the true cash value of the subject property, as of January 1, 1990, was $323,880. Costs to neither party.